## THE STATE v. IMBODEN, Appellant.

### Division Two, June 12, 1900.

1. **Forgery: INDICTMENT: BANK DRAFT: SUFFICIENT DESCRIPTION.** An indictment for forgery of a draft was sufficient where it recited the payee, amount, and the banks by and upon which it was drawn, and indorsements thereon, followed by a statement that the grand jurors were unable to give a more particular description thereof for the reason that such draft was in the possession of defendant.

2. ——: ——: ——: ——: REVENUE STAMP. An indictment for forgery of a draft was not insufficient in that it failed to state that a revenue stamp was affixed thereto.

3. ——: BANK DRAFT: EVIDENCE: SIGNATURE. To prove that a name was signed to a forged draft, which was not in evidence, the State introduced a witness, who testified as follows: "As to the signature, I don't remember. I remember to have remarked that I wished I could have written as smooth a hand as the man in there.

The body of the draft was that smooth handwriting. As to the sig-
nature and appearance of it as to the handwriting, and the kind of
writing,—the penmanship,—I don't remember. Who signed it I don't
remember." *Held*, that the testimony was too vague to establish
the fact that there was a signature to the draft.

Appeal from Jackson County Criminal Court.—*Hon.- Jno.
W. Wofford,* Judge.

REVERSED AND REMANDED.

*Hugh C. Brady* and *Boyle & Dillard* for appellant.

(1)   This evidence does not even tend to prove that the
draft was signed at all, much less signed by someone as an
officer of the Harbine Bank.   State v. Stowe, 132 Mo. 199;
State v. Yerger, 86 Mo. 33; State v. Fay, 65 Mo. 490.   (2)
Under the rule laid down in State v. Stowe, 132 Mo. 199, this
indictment must fall.   The witness, Hancock, was before the
grand jury; they had an opportunity of eliciting from him a
correct description of the draft that they attempted to intro-
duce in evidence; there is no excuse for their failure to have
done so.   The description as set forth in the indictment, as
compared with the description as shown by the evidence, is
vague, indefinite and uncertain.

*Edward C. Crow,* Attorney-General, and *Sam B.
Jeffries,* Assistant Attorney-General, for the State.

(1)   A revenue stamp is not a part of the check or
draft; hence, there need be no proof that the check or draft
did or did not contain such a stamp.   The internal revenue
law, as it existed at the time this check or draft was forged.
and as it exists to-day, contains an express provision that a
want of the proper stamp shall in no case cause the document
to be held invalid.   The revenue stamp clearly forms no
part of the instrument, and the omission to describe it con-

stitutes no variance. Miller v. People, 52 N. Y. 304; Cross
v. People, 47 Ill. 152; Kelley's Criminal Law, sec. 797. (2)
The indictment does not undertake to set out the forged in-
strument *in haec verba*, but simply undertakes to give what it
purports to be, and gives as a reason therefor that the instru-
ment is in the possession of the defendant, and a more par-
ticular description of said false, forged and counterfeit draft
these grand jurors are unable to give. It has been held that
under similar statutes to our own, a description that would be
good in an indictment for larceny is good in an indictment
for forgery, where the instrument is alleged to be in the pos-
session of the defendant. McClain on Crim. Law, sec. 800;
People v. Stewart, 4 Mich. 655. In all cases in this State
where the Court has held the variance fatal, the grand jurors
undertook to set out in the indictment the forged instrument
*in haec verba*, or else the trial judge held the variance preju-
dicial to the defendant. State v. Fay, 65 Mo. 490; State v.
Smith, 31 Mo. 120; State v. Chamberlain, 75 Mo. 382. The
trial court is the judge of the question as to whether or not
the variance is prejudicial to the defendant. State v. Wani-
mack, 70 Mo. 410. Variance in the indictment and proof
that is not prejudicial to the defendant are not grounds for
a reversal of the verdict and judgment. State v. Lamb, 141
Mo. 302; State v. Clinton, 86 Mo. 376; State v. Meyer, 82
Mo. 561.

SHERWOOD, J.—Charge, forgery in the second de-
gree; result of trial, verdict of guilty as charged in the first
count of the indictment and defendant awarded a term of ten
years in the penitentiary.

The count referred to is the following: "The grand
jurors for the State of Missouri, in and for the body of the
county of Jackson, upon their oath present that Leonard B.
Imboden, late of the county aforesaid, on the tenth day of

January, 1899, at the county of Jackson, State of Missouri, feloniously did forge, counterfeit and falsely make a certain false, forged and counterfeit draft, purporting to be made by the Harbine Bank of Fairburg, Nebraska, a bank duly incorporated and existing under and by virtue of the laws of the State of Nebraska, which said false, forged and counterfeit draft is of the purport following:

" 'Fairburg, Nebraska, January —, 1899, No. —.

" 'Pay to the order of Clark and Cameron Cattle Company, fifteen thousand, one hundred, twelve and 68-100 dollars, and draw on the Mercantile National Bank of New York, State of New York,' and purporting to be signed by ————————— as an officer of said Harbine Bank, and purporting to be endorsed by the Clark and Cameron Cattle Company, and H. F. Smith, a more particular description of said false, forged and counterfeit draft these grand jurors are unable to give for the reason that the said draft is in the possession of said Leonard B. Imboden, with the felonious intent thereby then and there to injure and defraud; against the peace and dignity of the State."

1.   Objection is taken to the sufficiency of the count mentioned.   But in consequence of the reasons given in the indictment and supported by the testimony, the indictment was well enough; the law does not require an impossibility, and the excuse given in the indictment for failure to set forth the draft with more particularity, is sufficient, and this case is unlike that of State v. Stowe, 132 Mo. 199.   There, the means of information, to-wit, the records of Greene county, were open to the grand jury; here, there were no such means available.

2.   Under the authorities, it was not necessary to allege that a revenue stamp was attached to the instrument in question.   [Kelley Crim. Law (2 Ed.), sec. 797; Miller v. People, 52 N. Y. 304.]

And it has been decided on several occasions that while Congress may punish for failure to affix a revenue stamp to any given instrument, yet it has not the power to dictate to the State courts that an instrument unstamped shall not be admitted in evidence. [Cross v. People, 47 Ill. 152; Craig v. Dimock, Ib. 308; Carpenter v. Snelling, 97 Mass. 457; Bumpass v. Taggart, 26 Ark. 398; 2 Bishop New Crim. Law, sec. 540 and cases cited.]

3. The indictment mentions a draft as having been forged; this means, of course, a complete instrument. But in this case there was no evidence that the litigated paper had ever been signed by any one. The testimony having any bearing on this point is that of Hancock, a State's witness, and the only one who testifies as to having seen the draft. His testimony is the following:

"Q. I will get you to describe as accurately as you can the appearance of this draft, this Harbine draft spoken of?

"A. It was a correspondence draft; it had the New York correspondence printed in the lower hand corner; the writing of the draft was in a smooth business hand, what I would call a clear Spencerian or business college hand; as to the signature I don't remember, I remember to have remarked that I wished I could have written as smooth a hand as the man in there, the body of the draft was that smooth handwriting, as to the signature and the appearance of it as to the handwriting and the kind of writing, the penmanship, I don't remember; who signed it I don't remember."

This testimony does not show, except perhaps in a vague inferential manner, that the instrument was signed by any one. Such testimony, to dignify it by such a name, is wholly insufficient to convict a man of forgery, or satisfy a jury of his guilt beyond a reasonable doubt. Forgery can not happen in the case of an unsigned paper. [1 Whart. Crim. Law (10 Ed.), sec. 698 and cases cited.]

However, in State v. Brooks, 92 Mo. loc. cit. 582, 583, 588 (*an unsigned diploma found in the defendant's trunk*) written by himself, which he had never shown or offered to show any one, was held legitimate evidence that defendant was a forger, although he was being tried for murder, and the alleged forgery had no imaginable connection with the (*crime for which he was on trial.*)    But that case is not law on that point and we will not follow it.

For the error mentioned, we reverse the judgment and remand the cause.    All concur.